Post divorce proceedings were filed by Mrs. Nelson against her former husband to enforce certain provisions of the divorce judgment as to doctor, dental and medical bills incurred on behalf of their minor children. Both parties testified before the trial court which ordered Mr. Nelson to reimburse *Page 121 
Mrs. Nelson for $810 of such expenses which had been paid by her. He was also directed to pay to an orthodontist $1,987 for dental services rendered to one of the children. Mr. Nelson appeals and raises two issues. We affirm.
The divorce judgment approved an agreement of the parties. Paragraphs numbered 10 and 12 of that agreement enter into the present controversy. By the terms of paragraph 10, Mrs. Nelson agreed to pay all "jointly owed indebtedness incurred by the parties during the marriage. . . ." Paragraph 12 provided that Mr. Nelson would be responsible for, and pay when due, all doctor, dental and medical bills incurred by the minor children.
 I
Mr. Nelson contends that, under paragraph 10 of the agreement, he was entitled to two credits as against the $810 which he was ordered to pay to his ex-wife.
He borrowed $300 from Mrs. Nelson's father to pay a dental bill for capping one of his teeth and he later paid this debt to his former father-in-law. The second alleged credit concerned a $170 balance due to a finance company. Mr. Nelson borrowed that money from them; the loan was only in his name and he repaid it to the creditor.
Under any reasonable construction, paragraph 10 means that Mrs. Nelson agreed to pay jointly owed debts incurred by them during their marriage. Since only Mr. Nelson was obligated to the two creditors to pay those two debts, they were not jointly owed, but were his personal debts. Mrs. Nelson was not a joint obligee as to either of the proposed credits. There was no joint liability therefor by both parties. Consequently, under paragraph 10 she was not due to pay either of those two debts of her former husband and the trial court properly failed to give Mr. Nelson credit for his payment of either of those accounts.
 II
For her dental health, one of the children needed certain orthodontic treatment, including braces, and her dentist referred her to a specialist. A letter from the daughter's orthodontist was introduced into evidence on Mr. Nelson's behalf. It stated in part as follows:
 "On July 18, 1980, Brandy [was] presented at my office for an evaluation. At that time we suggested that due to Brandy's severe handicapping condition that orthodontic records were needed to determine Brandy's condition. On August 5, 1980, we obtained diagnostic records. . . . "Due to Brandy's condition her general dentist and I felt that it was necessary to start treatment as soon as possible to avoid the need for extraction of permanent teeth which could greatly affect Brandy's profile.
 "At this time Mr. Nelson was contacted and informed, by phone, of Brandy's condition. He informed me at that time he did not have the financial reserves to pay for Brandy's treatment and wanted no treatment on her. On January 18, 1981 Brandy's general dentist got in touch with me concerned with no treatment being started on Brandy to this time. I then asked Ms. Nelson to give us permission to begin treatment as soon as possible, due to the immediate need I felt Brandy had. She agreed and on January 19, 1981, we initiated treatment on Brandy and informed Mr. Nelson that we had elected to proceed with treatment on Brandy with or without his making any financial retribution. He informed us at that time he did not plan to provide any payment since he had not authorized treatment. When we began treatment on Brandy we realized that this might be the condition and we made the election to treat Brandy at our own expense if need be. No charges have been made by our office or any payment received by our office on Brandy's account."
Mrs. Nelson testified that she had received a statement from the orthodontist in March, 1981. Further, her evidence was that Mr. Nelson owed the doctor $1,987 for dental services to the child and that Mr. Nelson had refused to pay it. Mr. Nelson *Page 122 
presented no evidence of his inability to pay as of the date of the trial.
By the terms of paragraph 12 of the agreement, which was incorporated in the divorce judgment, Mr. Nelson agreed to pay all dental bills of the children. That agreement and judgment were not conditioned upon Mr. Nelson's personal approval of the rendition of such services. He cannot escape his responsibility for the payment of dental services by his failure to authorize a dentist to treat his daughter. Mrs. Nelson has been billed for those services. The shift of responsibility for that debt by novation has not occurred. There is no evidence that she ever agreed that her former husband be relieved of liability for its payment and that she would be responsible therefor in his stead. No ambiguity exists, or is even raised, as to the agreement pertaining to Mr. Nelson's responsibility to pay his children's dental bills. The agreement of the parties was uncertain in Callen v. Callen, 257 Ala. 226, 58 So.2d 462
(1952), where payment for orthodontic services was nevertheless ordered. A parent may be required to pay for a child's orthodontic treatment if it is in the best interest of the child's welfare, and the modification of a prior divorce judgment may be made to that effect. Rickman v. Rickman,266 Ala. 371, 96 So.2d 674 (1957). While Mr. Nelson argues that the trial court abused its discretion and was palpably wrong, we find no such abuse nor wrongness.
The judgment of the circuit court is affirmed.
The foregoing opinion was prepared by Retired Circuit Judge EDWARD N. SCRUGGS while serving on active duty status as a judge of this court under the provisions of § 12-18-10 (e) of the Code of Alabama of 1975 and this opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur.